[Crim. No. 15691. Fourth Dist., Div. One. May 10, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
STEVEN ALAN JENKINS, Defendant and Appellant.

COUNSEL

Paul Bell, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Robert M. Foster and Yvonne H. Behart, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WIENER, Acting P. J.**—Steven Alan Jenkins appeals the order extending his commitment to a state hospital as a person who was found not guilty by reason of insanity. (Pen. Code, § 1026.5)[1] We reverse and remand.

In March of 1978, Jenkins was found not guilty by reason of insanity on charges of arson (former § 448a)[2] and burglary (§ 459) involving an incident at the Oneonta School. He was committed to Patton State Hospital under the provisions of section 1026. In August of 1981, Jenkins' commitment was extended for two years pursuant to section 1026.5, subdivision (b).

The extension petition giving rise to this appeal was filed in May of 1983. The petition alleged Jenkins had committed arson by setting fire to a school, "an act which poses a serious threat of bodily harm to another person,"

---

[1]All statutory references are to the Penal Code.

[2]The substance of former section 448a is now incorporated in section 451, subdivision (c).

which is the statutory language of section 1026.5, subdivision (b)(1).[3] It was further alleged Jenkins still suffered from a mental disease, defect, or disorder and represented a substantial danger of physical harm to others. Finding these allegations true, the court ordered Jenkins' commitment extended for an additional two years.

I

Section 1026.5, subdivision (a)(1) provides that a person convicted of a felony and later sent to a state hospital may not be kept in actual custody longer than the maximum term of commitment which could have been imposed for the offense or offenses of which that person was convicted. (See *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097].) When Jenkins' 1983 extension petition was filed, section 1026.5, subdivision (b)(1) qualified this rule by permitting the commitment to be extended when the defendant has committed one of a number of specified crimes or "has been found guilty of a felony involving . . . an act which poses a serious threat of bodily harm to another person, and who by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others."[4] (See fn. 3 *ante*.) When read together with (b)(6), subdivision (b)(1) requires the consideration of two separate issues before the defendant may be recommitted. First, the defendant's *crime* must fall within one of the categories specified in (b)(1), each of which focuses on the dangerousness of the defendant at the time of the crime's commission. We refer to this issue as the "offense-related predicate." It must then also be determined that the defendant continues to represent a "substantial dan-

---

[3]At the time of the 1983 recommitment proceeding, section 1026.5, subdivision (b)(1) provided as follows: "A person may be committed beyond the term prescribed by subdivision (a) only under the procedure set forth in this subdivision and only if such person has been committed under Section 1026 for a felony of murder, mayhem, a violation of Section 207 or 209 in which the victim suffers intentionally inflicted great bodily injury, robbery with a dangerous or deadly weapon or in which the victim suffers great bodily injury, a violation of subdivision (a) or (b) of Section 451, a violation of subdivision 2 or 3 of Section 261, a violation of Section 459 in the first degree, assault with intent to commit murder, a violation of Section 220 in which the victim suffers great bodily injury, a violation of Section 288, a violation of Section 12303.1, 12303.2, 12303.3, 12308, 12309, or 12310, or if the defendant has been found guilty of a felony involving death, great bodily injury, or an act which poses a serious threat of bodily harm to another person, and who by reason of a mental disease, defect, or disorder represents a substantial danger of physical harm to others.

[4]Effective January 1, 1985, section 1026.5, subdivision (b)(1) was amended to provide that being found not guilty by reason of insanity (NGI) of *any felony* may provide the basis for a recommitment proceeding. While this amendment reduces the likelihood of the issue raised by Jenkins recurring, it does not totally eliminate the problem. For instance, we foresee that the same issue would be involved under the new statute if the People failed to request that the trial court take judicial notice of the NGI judgment which specified the charged felony and the defendant contended on appeal that the People had not sustained their burden of proving an essential element of the recommitment charge.

ger" to others at the present time. This issue constitutes the "continuing danger predicate."

Jenkins does not challenge the court's finding that he continues to represent "a substantial danger of physical harm to others." ▮ Rather, he concentrates on the offense-related predicate which focuses on the offense of which he was originally "found guilty."[5] He correctly notes that his crime of arson (§ 451, subd. (c)) was not specifically listed in section 1026.5, subdivision (b)(1) and he further argues that the prosecutor in the recommitment proceeding presented no evidence to support the allegation that the arson "pose[d] a serious threat of bodily harm to another person." ▮ ▮ ▮ Accordingly, he contends that a crucial element of the recommitment charge is unsupported by the evidence and that the extension order must therefore be vacated.[6]

Although we recognize that a defendant in a section 1026.5 recommitment proceeding is entitled to all constitutional protections afforded defendants in criminal proceedings (see § 1026.5, subd. (b)(5)), we have trouble viewing the offense-related predicate strictly as an "element" of a "crime." It operates as a preliminary qualifying condition to define those persons eligible for a section 1026.5 recommitment and depends for its proof on the circumstances of the underlying offense which in most cases will be free from dispute.

---

[5]Needless to say, the phraseology in the statute is troubling since Jenkins was found *not* guilty by reason of insanity. We assume the Legislature intended that the statute apply whenever the court or jury trying the defendant finds he committed an act which would constitute an applicable crime if he were sane. (See generally § 1016.)

[6]The problem in this case is that the record before us contains none of the evidence regarding the original arson offense which was before the trial court which found Jenkins not guilty by reason of insanity. As a matter of statutory interpretation, we agree with Jenkins that the Legislature's inclusion of two varieties of arson (subds. (a) and (b) of § 451) in the specific list of predicate offenses in section 1026.5, subdivision (b)(1) strongly indicates a legislative intent that whether a given violation of section 451, subdivision (c) "poses a serious threat of bodily harm" must be resolved on a case-by-case basis. We emphasize, however, that in making such a case-by-case determination, subdivision (b)(1) requires only that the felony involve an act which poses a serious *threat* of bodily harm. The fortuity that no one was actually injured is irrelevant. (See *In re Fuller* (1981) 124 Cal.App.3d 251, 255-256 [177 Cal.Rptr. 233].) The potential for harm must be viewed from the perspective of the offender before he commits the act. If a reasonable person in such circumstances would recognize that the act poses a serious threat of bodily harm, the statutory predicate is satisfied.

In the present case, the record does not indicate what time of day the fire was set, whether students, school personnel or others may have been on the premises, or the extent to which a fire may have endangered adjacent property owners, bystanders or firefighting personnel charged with extinguishing the blaze. While we are inclined to think most arsons do in fact pose a "serious threat of bodily harm," such factors would undoubtedly be relevant in allowing the trial court to determine whether the offense-related predicate was satisfied in this case.

We infer from the record in this case as well as the several published opinions which have dealt with section 1026.5 recommitment proceedings that the focus of the hearing is nearly always on the continuing danger predicate.[7] Because section 1026.5 does not define a crime, and in view of the natural focus of such proceedings, we believe it appropriate that the defendant be required to raise the issue of the offense-related predicate before the People are required to introduce evidence and the court is required to make an explicit finding on the issue.[8] Where the defendant alerts the court to the fact he is contesting the offense-related predicate,[9] the People of course maintain the burden of proving beyond a reasonable doubt that defendant's offense meets the statutory criteria.[10] In the present case, however, we believe it would be unfair to simply affirm the recommitment order on the theory that Jenkins waived any argument by failing to raise the issue in the trial court. Where it appears that both judges and attorneys have routinely ignored the offense-related predicate issue (see *ante,* this page), we cannot in good conscience require extraordinary prescience of Jenkins' trial counsel. Accordingly, we remand the case to enable Jenkins, if he so chooses, to obtain a hearing on the limited issue of whether his arson "pose[d] a serious threat of bodily harm" within the meaning of former section 1026.5, subdivision (b)(1).

## II

At the beginning of the proceedings, the following colloquy occurred.

"THE COURT: Steven Alan Jenkins.

"MR. ODEN: Ready for Mr. Jenkins.

---

[7] Our research has revealed no published case which even discusses the offense-related predicate in a section 1026.5 proceeding.

[8] We further note that while each successive recommitment requires a de novo determination regarding the defendant's dangerousness, the offense-related predicate need only be established in the first recommitment proceeding for the doctrine of collateral estoppel to apply to subsequent recommitments. This of course assumes that the offense-related issue was "actually litigated" in the first proceeding. (See *People* v. *Sims* (1982) 32 Cal.3d 468, 484 [186 Cal.Rptr. 77, 651 P.2d 321]; see also *People* v. *Camp* (1970) 10 Cal.App.3d 651, 653-654 [89 Cal.Rptr. 242].)

[9] A simple procedure the trial court may wish to use to avoid any questions of this nature is to ask the defendant before beginning the section 1026.5 hearing whether he wishes to admit or deny the offense-related allegation and the continuing danger allegation.

[10] Thus, even were the offense-related predicate viewed as analogous to an element of a crime, our decision is in no sense inconsistent with *In re Winship* (1970) 397 U.S. 358 [20 L.Ed.2d 368, 90 S.Ct. 1068] and its progeny (see, e.g., *Mullaney* v. *Wilbur* (1975) 421 U.S. 684 [44 L.Ed.2d 508, 95 S.Ct. 1881]) which mandate that the prosecution prove all elements of the crime beyond a reasonable doubt. (See *People* v. *Hyde* (1985) 166 Cal.App.3d 463, 474-475 [212 Cal.Rptr. 440].)

"MR. FELDMAN: Ready for the People.

"THE COURT: Is this going to be submitted on the transcript or papers? What's going to happen?

"MR. ODEN: No, your Honor. We request a hearing, a trial.

"THE COURT: Estimated time, two days?

"MR. FELDMAN: Yes, your Honor.

"THE COURT: You still want a jury trial?

"MR. ODEN: No, non-jury.

"THE COURT: Is he present? Mr. Jenkins?

"Mr. Jenkins, your attorney informs me you're willing to waive jury trial and have this matter heard by a judge; is that correct?

"THE DEFENDANT: Yes.

"THE COURT: You're waiving your right to jury at this time.

"You're joining in the waiver, Counsel?

"MR. ODEN: Yes.

"THE COURT: People?

"MR. FELDMAN: Join in the waiver.

"THE COURT: Accept the jury waiver. Maybe I can get you a department right away. Let's trail."

■ Jenkins argues the court prejudicially erred in accepting the waiver without determining whether it was knowingly and intelligently made, particularly in light of Jenkins' mental problems. (See *In re Walker* (1969) 71 Cal.2d 54, 57 [77 Cal.Rptr. 16, 453 P.2d 456].)

There is no question but that it would have been preferable had the court asked Jenkins specifically whether he understood his right to a jury and whether he agreed to give up that right. ". . . [A] trial court [is] well advised to err on the side of caution and employ the time necessary to

explain adequately and to obtain express waiver of the rights involved. At stake is the protection of both the accused and the People, the latter by the assurance that an otherwise sound conviction will not fall due to an inadequate record." (*In re Tahl* (1969) 1 Cal.3d 122, 132 [81 Cal.Rptr. 577, 460 P.2d 449].) But the case before us does not involve a plea of guilty where a defendant relinquishes his constitutional rights to a jury trial, confrontation and his privilege against self-incrimination. By proceeding to trial, Jenkins retained the two latter rights. And even *Tahl* acknowledges there may be circumstances when defendant's jury waiver may be inferred. "We have no doubt that in the course of a trial a waiver of constitutional rights may be implied and need not necessarily be preceded by full explanation of each right and its consequences." (*Id.,* at p. 133.)

Here Jenkins' willingness to give up his right to a jury was stated by his counsel in response to the court's inquiry. Without further prompting, Jenkins' counsel said he wanted a full two-day hearing, but his client did not want a jury. Jenkins agreed. Under such circumstances, Jenkins' knowing and intelligent waiver may be implied. Appellate counsel does not suggest Jenkins' trial lawyer was incompetent by failing to explain to Jenkins the nature of the proceedings and the significance of his right to a jury. On this record we can presume that Jenkins' jury waiver was preceded by his lawyer's explanation and advice. A contention of inadequate assistance of counsel would be difficult to make since Jenkins' earlier extension hearing was adversely decided by a jury. "Certainly a court is in no position to discuss the merits of the two kinds of trial, either philosophically or tactically, with a defendant where the defendant is represented by competent counsel. It is enough that the court determine that the defendant understands that he is to be tried by the court and not a jury." (*People* v. *Acosta* (1971) 18 Cal.App.3d 895, 902 [96 Cal.Rptr. 234].) On this occasion Jenkins' decision to try his luck without a jury is understandable.

*Disposition*

Judgment reversed. The case is remanded for further proceedings consistent with this opinion.

Butler, J., and Gamer, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.