[Crim. No. 14277. Third Dist. July 18, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
MARCUS HUERO JUAREZ, JR., Defendant and Appellant.

**COUNSEL**

David E. Paulsen, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, and George M. Hendrickson, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**SPARKS, J.**—This is an appeal from an order extending defendant's commitment to the state hospital under Penal Code section 1026.5, subdivision (b). Following a jury trial in which he was found to be suffering from a mental disease, defect, or disorder which caused him to represent a substantial danger of physical harm to others, the defendant's commitment to Atascadero State Hospital as a person found not guilty by reason of insanity was ordered extended for two years. (Pen. Code, §§ 1026, 1026.5, subd. (b); all further undesignated section references are to the Penal Code.) On appeal, defendant does not attack the jury finding of his present dangerousness. Instead, he challenges the inclusion of his underlying offense within the definitional criteria of section 1026.5, subdivision (b) on a variety of grounds. We find his contentions without merit and shall affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

The nature of the defendant's challenge requires only an abbreviated recitation of the facts and procedural history.[1] In 1978, the defendant was convicted of assault with a deadly weapon (§ 245, subd. (a)) after a trial to the court. The court subsequently found the defendant not guilty by reason of insanity and he was committed to the state hospital. (§ 1026, subd. (a).) In 1981, the district attorney filed a petition requesting an extension of the defendant's commitment. (§ 1026.5, subd. (b).) After a trial by jury, the court extended the commitment by two years. We affirmed on appeal. (*People* v. *Juarez* (Dec. 13, 1982) 3 Crim. 11964 [unpub. opn.].) In 1983, the district attorney filed a second extension petition. The defendant waived further proceedings and his commitment was extended another year. In September 1984, the district attorney filed the instant extension petition. The defendant moved to dismiss this third petition on the ground that he did not come within the provisions of section 1026.5. The trial court denied the motion. The jury trial was held in January 1985 and, as mentioned above, his commitment was extended another two years to February 1987, based on the jury's finding the defendant represented a continuing danger. This appeal followed.

### DISCUSSION

When a person is committed to a state hospital having been found not guilty by reason of insanity, the commitment term runs until sanity is

---

[1]We grant the Attorney General's request to take judicial notice of the records in the prior appeal of *People* v. *Juarez* (Dec. 13, 1982) 3 Crim. 11964 [unpub. opn.]. Our facts are drawn in part from our prior opinion in that appeal.

recovered (§ 1026, subd. (b)) or until the maximum state prison term which could have been imposed for the offenses the defendant perpetrated has expired, whichever occurs first. (§ 1026.5, subd. (a); *In re Moye* (1978) 22 Cal.3d 457 [149 Cal.Rptr. 491, 584 P.2d 1097].) The restriction on the length of the term is qualified by section 1026.5, subdivision (b), which at the time the instant petition was filed permitted the extension of a state hospital commitment (1) if the underlying offense was one of certain enumerated felonies not relevant here "or if the defendant has been found guilty of a felony involving death, great bodily injury, or an act which poses a serious threat of bodily harm to another person," and (2) if the defendant by reason of mental disease, defect, or disorder represents a substantial danger of physical harm to others. (Stats. 1982, ch. 650, § 1.) In *People v. Jenkins* (1985) 168 Cal.App.3d 41, 44-45 [213 Cal.Rptr. 904], the court denominated these two requirements respectively as the "offense-related predicate" and the "continuing danger predicate."

Based on this version of the statute, the defendant unsuccessfully moved to dismiss the petition because the prosecution did not allege that his underlying conduct "poses a serious threat of bodily harm to another person . . . ." (Former § 1026.5, subd. (b).) On appeal defendant renews this argument and contends that the trial court committed prejudicial error in denying his motion to dismiss.

The petition for extended commitment alleged that defendant had been committed to a state hospital "under the provisions of Section 1026 of the Penal Code, after having been found not guilty by reason of insanity for [the] underlying crime of assault with a deadly weapon." ▮ Defendant claims that this allegation is defective because it does not require the prosecution to prove that "*his* crime of assault with a deadly weapon was in fact an act which involved a serious threat of bodily harm to another person." There are two answers to that argument. The first is that the issue was determined adversely to defendant in an earlier commitment proceeding and that determination is binding upon defendant under collateral estoppel principles in this appeal. In the prior case we held that the crime of assault with a deadly weapon "constitutes, as a matter of law, 'an act which poses a serious threat of bodily harm to another person' within the meaning of section 1026.5, subdivision (b)(1)." (*People v. Juarez* (Dec. 13, 1982) 3 Crim. 11964 [unpub. opn.].) As the *Jenkins* court correctly noted, "while each successive recommitment requires a de novo determination regarding the defendant's dangerousness, the offense-related predicate need only be established in the first recommitment proceeding for the doctrine of collateral estoppel to apply to subsequent recommitments." (*People v. Jenkins, supra,* 168 Cal.App.3d at p. 46, fn. 8.) Since the principles of collateral estoppel precluded the issue of whether defendant's crime fell within the statute from

being relitigated, the prosecution bore no burden to reprove that precluded issue once again.

The second answer is that defendant's argument overlooks the fact that effective January 1, 1985, the Legislature amended the complex offense-related predicate definition of section 1026.5, subdivision (b)(1) to read: "A person may be committed beyond the term prescribed by subdivision (a) . . . only if such person has been committed under section 1026 for *a felony* . . . ." (Stats. 1984, ch. 1488, § 5, p. —, italics added.) Under this simpler definition, the prosecution need only allege and prove that defendant had previously been committed under section 1026 for a felony. It need no longer establish that the felony was one of the designated crimes or involved death, great bodily injury or serious threat of bodily harm to another. The information filed against defendant alleged that on February 21, 1978, he committed an assault upon one Mary Ellen Davila with a deadly weapon, to wit, a knife. The crime of assault with a deadly weapon, at the time defendant committed his offense, was "punishable by imprisonment in the state prison for two, three or four years, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment." (Stats. 1976, ch. 1139, § 152.5, pp. 5105-5106.) Under the circumstances of this case, that crime necessarily constituted a felony. (§ 17.) Consequently, the prosecution met its burden of establishing that defendant had "been committed under Section 1026 for a felony . . . ." (§ 1026.5, subd. (b)(1).)

Defendant next argues, under a rather novel interpretation of the statute, that his underlying offense does not fit the definitional criteria for the offense-related predicate for a different reason. He further argues, drawing upon this interesting reading of the statute, that the inclusion of his underlying offense within the statute would constitute a violation of the principles of equal protection. Distilled to its essence, the argument is that the recommitment statute only applies to the crime of assault with a deadly weapon "if the defendant has been found guilty of a felony involving . . . . an act which poses a serious threat of bodily harm to another person" (former § 1026.5, subd. (b)(1)), and defendant was found not guilty by reason of insanity. Since he was not found guilty the statute cannot apply to his case. The short answer to this contention is that the 1985 amendment also eliminated the language on which the defendant would base his statutory interpretation and equal protection arguments, and consequently we need not reach them.[2]

---

[2]We note, however, that the defendant's reading of former section 1026.5, subdivision (b)(1), has been rejected in *People* v. *Overly* (1985) 171 Cal.App.3d 203 [216 Cal.Rptr. 924], which correctly reads the nonenumerated felonies as a catchall provision rather than

■ In a last ditch effort to salvage his argument, defendant makes a faint effort to argue in his reply brief that application of the new definitional criteria for the offense-related predicate would be an ex post facto law and therefore unconstitutional. (U.S. Const., art. I, § 10, cl. 1; Cal. Const., art. I, § 9.) This argument is readily dispatched by reference to our opinion in *Stickel* v. *Superior Court* (1982) 136 Cal.App.3d 850 [186 Cal.Rptr. 560], involving an ex post facto challenge to the repeal of the mentally disordered sex offender (MDSO) statutes, laws which the Supreme Court has found "quite similar" to the treatment of those found not guilty by reason of insanity. (*In re Moye, supra,* 22 Cal.3d at p. 463.)

■ The ex post facto clauses of the federal and state constitutions prohibit retrospective laws (1) imposing criminal liability for conduct innocent when it occurred, (2) increasing the punishment prescribed for a crime at the time it was committed, or (3) altering the situation of the accused to his disadvantage by necessary operation in their relation to the offense or their consequences. (*Stickel, supra,* 136 Cal.App.3d at p. 857; see also *In re Jackson* (1985) 39 Cal.3d 464, 469 [216 Cal.Rptr. 760, 703 P.2d 100].)
■ As with the repeal of the MDSO laws, the inclusion of all felonies within the offense predicate for recommitment does not make criminal any conduct which was innocent when done, nor does it increase or change the punishment for the commission of assault with a deadly weapon. "It remains only to be determined whether the [amendment] somehow 'disadvantaged' [the defendant] as an accused." (*Stickel* v. *Superior Court, supra,* 136 Cal.App.3d at p. 857.) That branch of ex post facto doctrine relates to circumstances under which a criminal defendant is forced to defend against a verdict of criminal guilt. (*Conservatorship of Hofferber* (1980) 28 Cal.3d 161, 180 [167 Cal.Rptr. 854, 616 P.2d 836]; *Stickel, supra,* 136 Cal.App.3d at pp. 857-858.) As the Supreme Court ruled in *Moye, supra,* commitment to a state hospital under section 1026 is "in lieu of criminal punishment" (22 Cal.3d at p. 463) and "is for purposes of *treatment,* not punishment." (*Id.,* at p. 466 [italics in original].) No criminal adjudication is involved, so there can be no ex post facto violation. (Cf. *Hofferber, supra,* 28 Cal.3d at p. 182.) Put another way, the commitment procedures do not even come into play until *after* there has been a determination the defendant has done an act which would be criminal were he sane. (§ 1026, subd. (a).) Thus, it is self-evident that the *recommitment* procedures could not disadvantage the defendant in the determination of his criminal guilt, so any amendment to them could not, by definition, constitute an ex post facto violation. (Cf. *Stickel, supra,* 136 Cal.App.3d at p. 858.)

a separate subset of offenses, and in *Jenkins, supra,* 168 Cal.App.3d at page 45, footnote 5, which correctly interpreted the phrase "found guilty" as simply meaning "found to have committed the acts." The defendant's statutory interpretation being incorrect, the equal protection argument based on it must fall as well. Thus, he would be unsuccessful even under the former version of the statute.

The judgment (order) is affirmed.

Regan, Acting P. J., and Sims, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 1, 1986.