Filed 11/10/16

**CERTIFIED FOR PUBLICATION**


**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**


| | |
|---|---|
| THE PEOPLE, | |
|     Plaintiff and Respondent, | E064557 |
| v. | (Super.Ct.No. INF1401895) |
| DAVID BUCKLEY DOYLE, | OPINION |
|     Defendant and Appellant. | |


APPEAL from the Superior Court of Riverside County. Richard A. Erwood, Judge. Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Theodore M. Cropley and Daniel J. Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

While driving under the influence of alcohol and drugs, defendant and appellant David Buckley Doyle swerved into oncoming traffic and hit Mark Joseph Norton (the victim) who was riding a motor scooter. The victim died immediately. Defendant drove away from the scene with the scooter lodged under his vehicle. He was apprehended one mile from the scene of the accident. Defendant was found guilty after a court trial of vehicular manslaughter, driving under the influence of alcohol and drugs causing great bodily injury, and fleeing the scene of an accident involving great bodily injury or death.

Defendant makes one claim on appeal that he was not fully advised of his constitutional rights to a trial by 12 jurors prior to waiving his right to a jury trial and proceeding to a court trial.

## FACTUAL AND PROCEDURAL HISTORY

### A.     PROCEDURAL HISTORY

Defendant was charged in count 1 of an information filed by the Riverside County District Attorney's Office with gross vehicular manslaughter while intoxicated within the meaning of Penal Code section 191.4, subdivision (a) and the allegation that he fled the scene of the accident within the meaning of Vehicle Code section 20001, subdivision (c). In count 2, defendant was charged with driving under the combined influence of alcohol and drugs causing death or great bodily injury within the meaning of Vehicle Code section 23153, subdivision (f) and the allegation that he personally inflicted great bodily injury or death within the meaning of Penal Code section 12022.7, subdivision (a). In count 3, defendant was charged with leaving the scene of an accident in violation of Vehicle Code section 20001, subdivision (a). Defendant waived his right to a jury trial.

2

The trial court found defendant guilty of all three counts in the information and found all of the enhancements true.

At the time of sentencing, the trial court dismissed the lesser included offense in count 2 and amended count 3 to a violation of Vehicle Code section 20001, subdivision (b)(2). Defendant was sentenced to six years in state prison on count 1, plus a consecutive sentence of five years for the enhancement on count 1. The sentence on count 3 was stayed. He received a total state prison sentence of 11 years.

B.    FACTUAL HISTORY

Several witnesses testified they were driving on Indian Canyon Drive in Palm Springs on July 4, 2014, at around 11:30 a.m. when a pickup truck driven by defendant crossed over the center line and into oncoming traffic. Defendant hit the victim, who was riding a scooter, head on. The victim was thrown from the scooter and landed partially on the sidewalk. Defendant drove away from the scene with the scooter lodged under his truck. Sparks were coming from the scooter hitting the ground. The victim died as a result of the impact.

Palm Springs Police Officer Cary Carrillo was on duty at approximately 11:40 a.m. on July 4, 2014. He responded to a report of an accident involving a pickup truck and a motorcycle at the corner of Granvia Valmonte and North Indian Canyon Drive in Palm Springs. When he arrived, there were several pedestrians on the corner of the intersection who directed him to where the pickup truck had left the scene.

Officer Carrillo drove north and observed gouge marks in the roadway. He followed the gouge marks to a parking lot located at 1433 North Indian Canyon.

3

Defendant was standing next to his pickup truck. The scooter was attached to the front of the truck. Officer Carrillo asked defendant if he was aware he had been in a traffic collision. Defendant took some time to answer but then asked if the victim was okay. Defendant did not recall hitting the scooter but saw it under his truck after he stopped. There appeared to be splattered brain matter on the truck's windshield. The windshield on the driver's side was cracked and the side window was missing.

Officer Carrillo noted that defendant appeared intoxicated because his eyelids were heavy, he appeared to be falling asleep as he stood and spoke with him, he smelled of alcohol, his speech was slurred, and at one point Officer Carrillo had to grab him to keep him from falling to the ground. Officer Carrillo determined that he would be unable to perform any field sobriety tests. Officer Carrillo was of the opinion that defendant was under the influence and could not safely operate a vehicle.

Defendant was searched. Inside one of his pockets he had a prescription bottle labeled Hydrocodone with pills. In another pocket he had a pipe, which contained white residue; it was the kind of pipe used to smoke methamphetamine. Defendant's blood was drawn at the hospital—as he was being transported to the jail.

Defendant was interviewed at the police station. Defendant woke up that morning around 6:00 a.m. and had bacon, eggs and toast for breakfast. He put some alcohol in his coffee. He took muscle relaxers for a broken femur he had suffered two years prior. He then headed to the store to buy some snacks. He was driving his pickup truck. Defendant only recalled that something hit his truck but could not recall how it had

4

happened. Defendant admitted he did not get out of his truck to help the victim. He did not notice the scooter lodged under his truck until he parked in the parking lot.

Officer Guillermo Fernandez was a drug recognition expert. He reviewed the police report and the toxicology reports for defendant. Officer Fernandez noted that defendant had appeared sleepy and was nodding off during the time of contact with Officer Carrillo. This type of behavior was common in those who used heroin and opiate–based medication such as Hydrocodone.

Defendant's toxicology reports showed he had a large amount of Diazepam in his system, which was a central nervous system depressant. He also had alcohol, Hydrocodone and benzodiazepines in his system. He also had methamphetamine in his system. Based on Officer Fernandez's review of the reports, he determined that defendant was under the influence of several drugs. These drugs would impact defendant's ability to respond. It would cause him to be in a "mental fog." It was unsafe for defendant to operate a motor vehicle. He would not have been able to maintain his vehicle in one lane based on being drowsy. The alcohol would have been a depressant.

## DISCUSSION

Defendant's sole contention on appeal is that the trial court failed to properly advise him of his right to have 12 persons serve on a jury, and that those 12 jurors had to make a unanimous decision as to his guilt prior to waiving his right to a jury trial. Such inadequate advisement of his right to a jury trial requires automatic reversal.

5

A.    ADDITIONAL FACTUAL BACKGROUND

On September 9, 2014, the trial court declared a doubt as to defendant's competency and ordered that he be evaluated by a psychiatrist. Dr. William Jones was appointed to evaluate defendant. Defendant was declared competent on October 23, 2014.

On July 15, 2015, the parties appeared for trial. Defendant's counsel stated that defendant had not yet entered a waiver of his right to a jury trial. Defendant's counsel was concerned because defendant had not been taking his prescribed antidepressant medication. Defendant's counsel stated, "He's not prepared to make any decisions today about whether or not he's willing to waive his right to a jury or if he, you know, basically wants the jury trial." Defendant's counsel requested a continuance so that defendant could be given his medication before he made the determination to waive a jury trial. The People agreed to the continuance and also were in agreement with the waiver of a jury trial, if that was what defendant desired. The trial court ordered that defendant receive his medication. The matter was continued for defendant to be stabilized on his medication.

The following exchanged then occurred on the day that the parties returned to court:

"[Defense Counsel]: I did have an opportunity to speak with [defendant] last night and this morning, and it's my understanding that he's prepared to enter a waiver of his Constitutional right to a jury trial and, instead, have a bench trial.

The Court: Okay. [¶] [Defendant.]

6

Defendant:  Yes, sir.

The Court:  It's indicated to the Court that you're waiving your right to a jury trial and having, instead, a bench trial.  [¶]  Is that what you wish to do?

Defendant:  Yes, sir.

The Court:  You understand that the burden of proof will be the same if you go before a jury, it's proof beyond a reasonable doubt; court trial, same burden of proof, proof beyond a reasonable doubt.  [¶]  Do you understand that?

Defendant:  Yes, sir.

The Court:  You understand that your other Constitutional rights will be the same; that is, you have the right to subpoena witnesses, to testify on your behalf at no cost to yourself.  You have the right to take the stand and testify, or refuse to take the stand and testify, no matter what your wishes are.  You have the right to have your lawyer present and cross-examine the witnesses against you.  [¶]  Do you understand all those rights?

Defendant:  Yes, sir, I do."

Defendant's counsel and the People joined in the waiver.  The trial court proceeded with a court trial.

B.     ANALYSIS

"A defendant in a criminal prosecution has a right to a trial by jury under both the federal Constitution [citation] and our state Constitution."  (*People v. Ernst* (1994) 8 Cal.4th 441, 444-445.)  Under the state Constitution, "'Trial by jury is an inviolate right and shall be secured to all. . . .  A jury may be waived in a criminal cause by the consent of both parties expressed in open court by the defendant and the defendant's counsel. . . .

[¶] In criminal actions in which a felony is charged, the jury shall consist of 12 persons. In criminal actions in which a misdemeanor is charged, the jury shall consist of 12 persons or a lesser number agreed on by the parties in open court.' Our state Supreme Court has 'recognized that this state constitutional right is fundamental.'" (*People v. Traugott* (2010) 184 Cal.App.4th 492, 499-500.)

"To be valid, a defendant's waiver of the right to a jury must also be 'knowing and intelligent, that is, ""made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,""" as well as voluntary ""in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."""" (*People v. Weaver* (2012) 53 Cal.4th 1056, 1071-1072.) "No particular language is necessary to waive a jury trial so long as the words employed disclose in their ordinary, common sense, fair meaning and context an intention to be tried by the court sitting without a jury." (*People v. Martin* (1980) 111 Cal.App.3d 973, 982.)

"[T]he denial of a defendant's constitutional right to jury trial on a charged offense constitutes structural error that requires reversal without consideration of the strength of the evidence." (*People v. French* (2008) 43 Cal.4th 36, 52, fn. 8.)

Here, the trial court was advised by defendant's counsel that she had discussed the issue of waiving a jury with defendant, after he was stabilized on his medication, and that he was prepared to waive that right. The trial court then informed defendant that the burden of proof—beyond a reasonable doubt—would be the same if he chose a jury trial or a court trial. The trial court also explained that his other rights, such as his right to

8

subpoena witnesses, his right to take the stand and testify, and his right to have his lawyer present and cross-examine the witnesses against him would all remain the same. Defendant acknowledged that he understood all of these rights.

It is true that defendant was never advised that he was entitled to a unanimous verdict by 12 jurors. However, as stated, there is no requirement that the trial court explain to a defendant every aspect that he is giving up in entering a waiver to a jury trial. (*People v. Martin*, *supra*, 111 Cal.App.3d at p. 982; see also *People v. Wrest* (1992) 3 Cal.4th 1088, 1103 [rejecting that there is a specific admonition that must be recited to a defendant in order for a valid waiver of a jury trial].) Defendant was made aware of his right to be found guilty beyond a reasonable doubt by either a jury or the court, and that he would still have the same rights of cross-examination and to testify at a court trial. Defendant waived his right to a jury trial without hesitation.

Moreover, as stated by the People, defendant was represented by counsel at the time that he entered his waiver. In *People v. Acosta* (1971) 18 Cal.App.3d 895, the defendant argued he did not knowingly and intelligently waive his right to a jury trial. He insisted he was only advised that he had a right to have the case heard by a jury and no other rights were explained to him. On appeal, he argued that "he did not know what a jury is or what it meant to waive trial by jury and to be tried by a judge." (*Id.* at pp. 900-902.) The appellate court found "We are not aware of any rule of law that entitles a defendant who is represented by counsel and who has discussed waiver of a jury trial with his counsel, as here, to have the court advise him of the merits or the disadvantages

9

of a trial by jury, as against a court trial. . . . It is enough that the court determine that the defendant understands that he is to be tried by the court and not a jury." (*Id.* at p. 902.)

Here, defendant's counsel advised the trial court she had discussed defendant's waiver of a jury trial with him on two occasions. There is nothing in the record to support that defendant was confused as to the right to a jury trial or that he did not knowingly waive that right.

Defendant has cited to several intermediate federal cases, e.g. *United States v. Gonzalez-Flores* (9th Cir.2005) 418 F.3d 1093, 1102-1103; *United States v. Duarte-Higareda* (9th Cir. 1997) 113 F.3d 1000, 1002; *Marone v. United States* (2d.Cir. 1993) 10 F.3d 65, 68; and *U.S. v. Delgado* (1981) 635 F.2d 889, 890 to support his claim that the waiver was inadequate in this case. These cases establish that a waiver is voluntary, knowing and intelligent if the defendant is informed that 12 members of the community compose a jury, the defendant can take part in jury selection, that the jury verdict must be unanimous and that the trial court will solely decide guilt or innocence if the defendant waives a jury trial. (*Duarte-Higareda*, at p. 1002; see also *Gonzalez-Flores*, at pp. 1102-1103.) However, even the federal court has stated, "[t]hough we have declined 'to impose an absolute requirement of such a colloquy in every case,' [citation], in its absence we will find a valid waiver of the jury trial right only where there are strong indicia that the waiver was voluntary, knowing, and intelligent." (*Gonzalez-Flores*, at p. 1103.) Moreover, the California Supreme Court has refused to adopt these specific admonitions to find a waiver of a jury trial is knowingly and intelligently made. (*People v. Weaver*, *supra*, 53 Cal.4th at pp. 1072-1074.) We have found no case, and defendant

has provided no controlling authority, that the failure to advise defendant that the jury would be comprised of 12 jurors who must unanimously find his guilt renders the waiver of jury trial inadequate.

We find that defendant's waiver of jury trial in this case was voluntary, knowing and intelligent.

## DISPOSITION

We affirm the judgment.

CERTIFIED FOR PUBLICATION

MILLER

J.

We concur:

HOLLENHORST

Acting P. J.

CODRINGTON

J.