DISSENTING STATEMENT BY LIU, J.
Petitioner David Buckley Doyle was convicted of vehicular manslaughter, driving under the influence of alcohol and drugs causing great bodily injury, and fleeing the scene of an accident involving great bodily injury or death. He was sentenced to 11 years in prison. His sole claim on appeal is that he was not fully advised of his constitutional right to a jury trial before waiving that right and proceeding to a bench trial. Before accepting his waiver, the trial court conducted a brief colloquy with Doyle. The colloquy did not inform him of any differences between a jury trial and a bench trial. Nor did the trial court ask Doyle whether he had had adequate opportunity to discuss the waiver decision with counsel or whether he understood the nature of the right he was purporting to waive. The Court of Appeal upheld the waiver, relying on the rule we first stated in People v. Langdon (1959) 52 Cal.2d 425, 341 P.2d 303 ( Langdon ) that a trial court's failure to "explain[ ] to [a] defendant the nature and possible consequence of his action in waiving a jury trial" is not grounds for finding the waiver invalid where the defendant "was represented by counsel, and he fails to indicate anything in the record to show that either he or his counsel was misled as to the result which might occur from his waiving a jury trial." ( Id. at p. 432, 341 P.2d 303.) As explained below, we have not relied on the Langdon rule to uphold a jury trial waiver in nearly 50 years. Instead of requiring a defendant who was represented by counsel to affirmatively demonstrate that his waiver was not knowing and intelligent, our case law has upheld the waiver of a jury trial "only when the record affirmatively demonstrates it was knowing and intelligent." (People v. Daniels (2017) 3 Cal.5th 961, 991, 221 Cal.Rptr.3d 777, 400 P.3d 385 (Daniels ) (lead opn. of Cuéllar, J.).) This approach reflects our recognition that the constitutional right to a jury trial is "fundamental" and cannot be validly waived unless the defendant has " ' " 'a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it.' " ' " (People v. Collins (2001) 26 Cal.4th 297, 305, 109 Cal.Rptr.2d 836, 27 P.3d 726 (Collins ); see Duncan v. Louisiana (1968) 391 U.S. 145, 149, 88 S.Ct. 1444, 20 L.Ed.2d 491 ["trial by jury in criminal cases is fundamental to the American scheme of justice"].) Because there is serious reason to question the continuing vitality of the Langdon rule, I would order briefing and decide the merits of this case instead of dismissing review.
This case is the third time in recent months that we have been confronted with a troublingly spare colloquy in evaluating *370 the validity of a criminal defendant's jury trial waiver. (See Daniels, supra, 3 Cal.5th 961, 221 Cal.Rptr.3d 777, 400 P.3d 385 ; People v. Sivongxxay (2017) 3 Cal.5th 151, 219 Cal.Rptr.3d 265, 396 P.3d 424 (Sivongxxay ).) This court has offered "general guidance" for ensuring that a waiver decision is knowing and intelligent, but it has decided against prescribing specific rules or procedures for constitutional compliance. ( Sivongxxay, at p. 169, 219 Cal.Rptr.3d 265, 396 P.3d 424.) Although the court today declines to revisit this issue, consideration of appropriate safeguards "need not await judicial action." ( In re Joseph H. (2015) --- Cal.5th ----, 200 Cal.Rptr.3d 1, 367 P.3d 1, 5 (statement by Liu, J., dissenting from denial of review).) The **2 importance and recurring nature of the issue suggest it may be worthy of examination by the Judicial Council or the Legislature. I. Facing serious felony charges arising from his role as the driver in a hit-and-run collision that killed one victim, Doyle waived his right to a jury trial after the following colloquy: "[Defense Counsel]: I did have an opportunity to speak with Mr. Doyle last night and this morning, and it's my understanding that he's prepared to enter a waiver of his Constitutional right to a jury trial and, instead, have a bench trial. "THE COURT: Okay. [¶] Mr. Doyle. "DEFENDANT: Yes, sir. "THE COURT: It's indicated to the Court that you're waiving your right to a jury trial and having, instead, a bench trial. [¶] Is that what you wish to do? "DEFENDANT: Yes, sir. "THE COURT: You understand that the burden of proof will be the same if you go before a jury, it's proof beyond a reasonable doubt; court trial, same burden of proof, proof beyond a reasonable doubt. [¶] Do you understand that? "DEFENDANT: Yes, sir. "THE COURT: You understand that your other Constitutional rights will be the same; that is, you have the right to subpoena witnesses, to testify on your behalf at no cost to yourself. You have the right to take the stand and testify, or refuse to take the stand and testify, no matter what your wishes are. You have the right to have your lawyer present and cross-examine the witnesses against you. [¶] Do you understand all those rights? "DEFENDANT: Yes, sir, I do." As the transcript indicates, the colloquy mentioned similarities between a jury trial and a bench trial, but did not explain any of the distinctive features of a jury trial. The trial court did not inform Doyle that a jury consists of 12 persons selected from the community, that all 12 jurors must be unanimous in order to render a verdict, or that he and his attorney may participate in selecting the jurors. Although the trial court asked Doyle whether he understood other constitutional rights that would remain the same in a bench trial, the court never asked whether he understood the nature of the right to a jury trial. Doyle's counsel noted that she "did have an opportunity to speak with Mr. Doyle last night and this morning, " but there is no indication of what was discussed or whether Doyle's opportunity to discuss the waiver with counsel had been adequate. The Court of Appeal upheld Doyle's waiver as knowing and intelligent, reasoning that "defendant's counsel advised the trial court she had discussed defendant's waiver of a jury trial with him on two occasions" and that "[t]here is nothing in the record to support that defendant was confused as to the right to a jury trial or that he did not knowingly waive that right." (People v. Doyle (2016) 5 Cal.App.5th 440, 447, 209 Cal.Rptr.3d 828 (Doyle ).) The court relied on People v. Acosta (1971) 18 Cal.App.3d 895, 96 Cal.Rptr. 234, which said there is no "rule of law that entitles a defendant who is represented by counsel and who has discussed waiver of a jury trial with his counsel, as here, to have the court advise him of the *371 merits or the disadvantages of a trial by jury, as against a court trial. ... It is enough that the court determine that the defendant understands that he is to be tried by the court and not a jury." ( Id. at p. 902, 96 Cal.Rptr. 234.) Acosta, in turn, cited our decision in People v. Lookadoo (1967) 66 Cal.2d 307, 57 Cal.Rptr. 608, 425 P.2d 208 (Lookadoo), which restated our holding in Langdon that "the trial court in a criminal case is not required to explain to a defendant the nature and consequences of his action in waiving a jury trial where he is ... represented by counsel and fails to show that either he or his counsel has been misled as to the result which might occur from his waiving a jury trial." ( Lookadoo, at p. 311, 57 Cal.Rptr. 608, 425 P.2d 208, citing Langdon, supra, 52 Cal.2d at p. 432, 341 P.2d 303.) In light of the barebones nature of the colloquy in this case, it is not surprising that the Court of Appeal placed heavy reliance on the rule stated almost 60 years ago in Langdon. But there is strong reason to question the continuing vitality of Langdon's rule that a jury trial waiver by a defendant with counsel is presumed to be knowing and intelligent in the absence of any affirmative indication that the defendant did not understand the nature of the jury trial right. Although we have never expressly disapproved this rule, our case law over the past 50 years shows that it has fallen into desuetude. We have cited Langdon with approval in only three decisions upholding **3 jury trial waivers. (See People v. Tijerina (1969) 1 Cal.3d 41, 46, 81 Cal.Rptr. 264, 459 P.2d 680 (Tijerina) ; Lookadoo, supra, 66 Cal.2d at p. 311, 57 Cal.Rptr. 608, 425 P.2d 208 ; People v. Golston (1962) 58 Cal.2d 535, 537-539, 25 Cal.Rptr. 83, 375 P.2d 51, abrogated on another ground by People v. Green (1980) 27 Cal.3d 1, 33, 164 Cal.Rptr. 1, 609 P.2d 468.) But in Lookadoo and Golston, we did not merely rely on the fact that the defendant had counsel; we also noted that the trial court had explained the basic contours of the jury right in a colloquy with the defendant and had ensured the defendant understood that right. ( Lookadoo, at pp. 311-312, 57 Cal.Rptr. 608, 425 P.2d 208 [trial court "went to great lengths to explain the nature and consequences of such a waiver," defense counsel "paraphrased the court's statement to present the matter in even simpler language," and "[t]he judge asked defendant numerous times if he understood the explanations given to him ...."]; Golston, at p. 539, 25 Cal.Rptr. 83, 375 P.2d 51 [trial court told defendant he had the right to a unanimous verdict by all 12 jurors, and defendant answered, "when queried by the trial judge, that he understood what such a waiver meant"].) In Tijerina, the defendant "stated that he knew what a jury trial was, and he was also told [by the trial court] that '[T]hat is when twelve people sit over here in the box and hear all the evidence.' " ( Tijerina, at pp. 45-46, 81 Cal.Rptr. 264, 459 P.2d 680 ; see id. at p. 45, fn. 2, 81 Cal.Rptr. 264, 459 P.2d 680.) "Under these circumstances," we said, "the court was not required to explain further to defendant the significance of his waiver of a jury trial." ( Id. at p. 46, 81 Cal.Rptr. 264, 459 P.2d 680.) Tijerina, decided in 1969, was the last time we placed any reliance on the Langdon rule. Since then, instead of placing the burden on a defendant who was represented by counsel to show his or her waiver was not knowing and intelligent, our decisions have carefully examined the record for affirmative indications that the defendant was aware of the nature of the jury trial right and the consequences of waiving it. In so doing, we have not presumed that an express waiver is knowing and intelligent from the mere fact that a defendant was represented by counsel. People v. Miller (1972) 7 Cal.3d 562, 102 Cal.Rptr. 841, 498 P.2d 1089 (Miller ) marks the beginning *372 of this shift. In Miller, we noted the "remarkable care exercised by the trial judge in satisfying himself that defendant fully understood the nature and consequences of his proposed course of action, and that any waiver he might make would be both knowing and intelligent. By a detailed series of questions and explanations, the judge established that defendant had discussed the matter at length with his two attorneys; that he knew he had the right to have the case tried by 12 jurors; that he understood the charges against him and the pleas he had entered; that he realized the same judge would determine the issues of guilt, sanity, and penalty; that he was aware of the punishments which could be imposed in this case, including the possibility of a death penalty; and that no promise of special treatment or leniency had been made to him in exchange for his waiver of a jury." ( Id. at pp. 566-567, 102 Cal.Rptr. 841, 498 P.2d 1089.)
In upholding the validity of the waiver, Miller cited several cases, including Lookadoo, as "controll[ing]" precedent. ( Miller, supra, 7 Cal.3d at p. 567, 102 Cal.Rptr. 841, 498 P.2d 1089.) "In each of those cases," we explained, "the defendant had a limited education and a borderline intelligence, but was represented by counsel and benefited from a detailed examination by the trial court into the nature and consequences of a waiver of jury trial; in each, we held that the defendant was capable of making a knowing and intelligent waiver of that right, and had done so on the record before us." ( Ibid. ) Miller did not rely on the portion of Lookadoo that affirmed Langdon's rule that an express waiver by a counseled defendant is presumed to be knowing and voluntary unless the record shows otherwise. (See Lookadoo, supra, 66 Cal.2d at p. 311, 57 Cal.Rptr. 608, 425 P.2d 208.) Instead, what Miller deemed "controll[ing]" was Lookadoo's reliance on affirmative indications in the record that the defendant not only had counsel but also had "benefited from a detailed examination by the trial court into the nature and consequences of a waiver of jury trial." ( Miller, at p. 567, 102 Cal.Rptr. 841, 498 P.2d 1089 ; see Lookadoo, at pp. 311-312, 57 Cal.Rptr. 608, 425 P.2d 208.) In describing **4 the controlling feature of Lookadoo this way, Miller signaled a departure from the Langdon rule. After Miller, in every case where we have examined whether a defendant represented by counsel acted knowingly and intelligently in waiving a jury trial in favor of a bench trial on guilt or capital sentencing, we have focused our analysis on whether the record affirmatively indicated that the defendant was informed of the nature of a jury trial and the consequences of waiver. (See Sivongxxay, supra, 3 Cal.5th at pp. 167-168, 174, 189-190 ; People v. Cunningham (2015) 61 Cal.4th 609, 636-637, 189 Cal.Rptr.3d 737, 352 P.3d 318 (Cunningham ); People v. Weaver (2012) 53 Cal.4th 1056, 1070-1071, 139 Cal.Rptr.3d 355, 273 P.3d 546 (Weaver ); Collins, supra, 26 Cal.4th at pp. 307-309, 109 Cal.Rptr.2d 836, 27 P.3d 726 ; People v. Scott (1997) 15 Cal.4th 1188, 1208-1210, 65 Cal.Rptr.2d 240, 939 P.2d 354 (Scott ); People v. Diaz (1992) 3 Cal.4th 495, 570-571, 11 Cal.Rptr.2d 353, 834 P.2d 1171 (Diaz ); People v. Robertson (1989) 48 Cal.3d 18, 37-38, 255 Cal.Rptr. 631, 767 P.2d 1109 (Robertson ); People v. Deere (1985) 41 Cal.3d 353, 359-360, 222 Cal.Rptr. 13, 710 P.2d 925 ( Deere ).) In Deere, the defendant and his counsel waived a jury trial at the penalty phase of a capital trial. We observed that defense counsel informed the court that the "defendant 'knows what would happen if the case went to jury trial, and he feels that the expense of a circus or charade of a trial is not right for him or for the community.' " ( Deere, supra, 41 Cal.3d at p. 359, 222 Cal.Rptr. 13, 710 P.2d 925.) Further, "[d]efense *373 counsel explained at length to the court why he permitted his client ... to waive a penalty jury," and there was no indication that these statements by defense counsel were made outside of the defendant's presence. ( Id. at p. 357, 222 Cal.Rptr. 13, 710 P.2d 925.) Under these circumstances, the defendant's only complaint as to whether his waiver was knowing and intelligent was that "he was never told his waiver of a penalty jury would necessarily preclude an independent reevaluation of the verdict by the judge." ( Id. at p. 359, 222 Cal.Rptr. 13, 710 P.2d 925.) We said this claim was "frivolous" because the "defendant is deemed to have known that by waiving a jury trial he would lose his statutory right to a penalty decision by both the jury and the judge." ( Ibid. )
In Robertson, we upheld the defendant's penalty phase waiver on the basis of ample indications in the record that the waiver was knowing and intelligent. ( Robertson, supra, 48 Cal.3d at pp. 35-38, 255 Cal.Rptr. 631, 767 P.2d 1109.) We specifically held that "[a]lthough the court would have done better to explain to defendant the effect of a jury deadlock, its omission does not invalidate defendant's waiver" ( id. at pp. 37-38, 255 Cal.Rptr. 631, 767 P.2d 1109 ) given the fact that he "was represented by two apparently competent counsel who over the course of several days discussed with him 'at length' the consequences and nature of his proposed waiver. Absent an assertion or evidence to the contrary, we presume that competent counsel would have informed defendant of the effect of a jury deadlock" ( id. at p. 36, 255 Cal.Rptr. 631, 767 P.2d 1109 ). We went on to observe: "Counsel in defendant's presence expressed on the record their sound tactical reasons for advising defendant to waive a jury and consenting to the waiver. The court, before accepting defendant's waiver, engaged him in an extensive and thorough voir dire expressly directed to determining his waiver was knowing, intelligent and voluntary." ( Id. at p. 37, 255 Cal.Rptr. 631, 767 P.2d 1109, fn.omitted; see id. at p. 37, fn. 5, 255 Cal.Rptr. 631, 767 P.2d 1109 [reprinting the waiver colloquy].) Among several advisements given during the lengthy colloquy, the trial court said to the defendant: " 'You understand ... that if you do waive jury and submit it to the Court, the Court will act solely. If you have a jury trial, before a verdict can be returned either way, it requires unanimous agreement of all 12 jurors; do you understand that?' " ( Ibid. ) The defendant answered, " 'Yes, Your Honor.' " ( Ibid. ) As to the defendant's claim that the trial court "failed to conduct the hearing on his jury waiver with the 'special attention and care" that he asserts his allegedly 'borderline intelligence' merited," we said "[t]he record is otherwise." ( Id. at p. 38, 255 Cal.Rptr. 631, 767 P.2d 1109.) In Diaz, we upheld a penalty phase jury trial waiver where the trial court had advised the defendant that the jury's " 'first function is to decide the question of your guilt or innocence.
**5 Then the second function, similarly, assuming there are 12 of them and they would unanimously agree that you were guilty, then you would have 12 jurors who must unanimously agree as to the punishment. [¶] They have a choice, life without possibility of parole or death. ... And you'll be giving up that right.' " ( Diaz, supra, 3 Cal.4th at p. 564, 11 Cal.Rptr.2d 353, 834 P.2d 1171.) "Defendant answered, 'I'm giving it up.' " ( Ibid. ) "Defendant also told the court that he had discussed the matter 'quite thoroughly' with his counsel." ( Id. at p. 565, 11 Cal.Rptr.2d 353, 834 P.2d 1171.) We concluded that the waiver was knowing and intelligent, noting that "defendant acknowledged that he had thoroughly discussed the jury waiver with his attorney" and that "when the court asked whether he had any questions regarding the waiver, *374 or wished to discuss it further with counsel, defendant answered in the negative." ( Id. at p. 571, 11 Cal.Rptr.2d 353, 834 P.2d 1171.) As in Robertson, we rejected a claim that the trial court's advisement was inadequate because it did not explain what would happen if the jury could not agree on the penalty. ( Diaz, at p. 570, 11 Cal.Rptr.2d 353, 834 P.2d 1171.)
In Scott, before the trial court accepted the defendant's jury trial waiver, "[t]he prosecutor explained what a jury trial was and that the jury would have to agree unanimously on guilt, special circumstances, and penalty. He explained the charges, including the special circumstance allegations, and their significance, and that, if defendant waived a jury trial, the judge alone could find defendant guilty, find the special circumstances true, and impose the death penalty, with no need for anyone else to agree. He also explained the nature of a penalty trial. Defendant repeatedly said he understood." ( Scott, supra, 15 Cal.4th at p. 1208, 65 Cal.Rptr.2d 240, 939 P.2d 354.) Further, the "defendant requested and was given an opportunity to consult with his attorney." ( Ibid. ) "Defense counsel stated that he and defendant had discussed the matter, and both agreed that the waiver was in defendant's best interests 'in terms of trial tactics.' Defendant personally stated he agreed. When the court noted that defendant had hesitated slightly at one point, defendant reiterated his desire to waive a jury. He said he had had enough time to talk to his attorney and felt comfortable with his decision." ( Ibid. ) On this record, we said the trial court properly accepted the waiver. ( Id. at p. 1210, 65 Cal.Rptr.2d 240, 939 P.2d 354.) In Collins, the trial court observed that "defense counsel had spoken with defendant about giving up his right to a jury trial and having the trial take place solely before a judge." ( Collins, supra, 26 Cal.4th at p. 301, 109 Cal.Rptr.2d 836, 27 P.3d 726.) In addition, the trial court extensively advised the defendant on the nature of a jury trial, including the fact that "in order to return a verdict of guilty, all 12 jurors would have to agree to the verdict" ( id. at p. 301, 109 Cal.Rptr.2d 836, 27 P.3d 726 ) and the fact that "defendant would relinquish solely his right to trial by jury [by waiving] and would retain all his other rights" ( id. at p. 302, 109 Cal.Rptr.2d 836, 27 P.3d 726 ). The trial court also "questioned defendant to determine whether defendant had sufficient knowledge of the right being waived, and obtained defendant's repeated affirmations that he understood the difference between trying his case to a jury and trying it to the court." ( Id. at p. 311, 109 Cal.Rptr.2d 836, 27 P.3d 726.) We said the trial court gave "appropriate explanations and advisements concerning the right to jury trial" "in order to determine whether defendant's decision to waive that right was knowing and intelligent." ( Ibid. ) In Weaver, the defendant "executed a two-page written waiver of his right to a jury trial" in which he affirmed "that defense counsel 'has fully explained' to defendant the terms 'jury trial' and 'court trial' and the 'difference between a "jury trial" and a "court trial." ' " ( Weaver, supra, 53 Cal.4th at p. 1070, 139 Cal.Rptr.3d 355, 273 P.3d 546.) The trial court then "explained to defendant a number of differences between a court trial and a jury trial," including the jury unanimity requirement and the fact that a jury is composed of 12 members of the community. ( Ibid. ) The defendant confirmed that he understood those concepts and reiterated that defense counsel had explained to him the differences between a jury trial and a bench trial. One of the defendant's attorneys then "stated that he, the other defense attorney, defendant, and defendant's father **6 had discussed the matter together the day before *375 for about two hours, and that the attorney believed waiving a jury was in defendant's best interest. Defendant said he agreed with what his attorney had just said." ( Id. at pp. 1070-1071, 139 Cal.Rptr.3d 355, 273 P.3d 546.) We concluded: "The court was exceptionally careful in taking defendant's jury waiver. That waiver was knowing, intelligent, and voluntary in all respects." ( Id. at p. 1076, 139 Cal.Rptr.3d 355, 273 P.3d 546.)
In Cunningham, we noted that "[i]n response to questioning by the court, defendant indicated he understood (1) he had an absolute right to a jury trial in both the guilt and penalty phases of his trial, (2) in a jury trial, if one of the 12 jurors was not convinced beyond a reasonable doubt that defendant was guilty, the jury could not return a guilty verdict, (3) if he waived his right to a jury trial, instead of 12 people deciding the issue of his guilt or innocence, the judge alone would make that decision, and (4) it could be easier for the prosecution to convince only one person, as opposed to 12, that defendant was guilty beyond a reasonable doubt." ( Cunningham, supra, 61 Cal.4th at p. 636, 189 Cal.Rptr.3d 737, 352 P.3d 318.) In addition, the defendant "confirm[ed] he had discussed the issue with his counsel, who concurred in the waiver." ( Ibid. ) On this record, we held: "The conclusion defendant's waiver of a guilt phase jury was knowing, intelligent, and voluntary is supported by his clear express waiver, made in open court, with counsel's consent and agreement, and after a full explanation from the court of the right and the consequences of the waiver." ( Id. at p. 637, 189 Cal.Rptr.3d 737, 352 P.3d 318.) In the cases above, we did not purport to establish minimum requirements for a knowing and intelligent jury trial waiver, nor did we presume the validity of a waiver based on the fact that a defendant was represented by counsel. Instead, we examined the totality of the circumstances in each case to decide whether the waiver was knowing and intelligent. In every case beginning with Miller, we have relied on affirmative indications in the record-through questioning by the court ( Cunningham, supra, 61 Cal.4th at p. 636, 189 Cal.Rptr.3d 737, 352 P.3d 318 ; Weaver, supra, 53 Cal.4th at pp. 1070-1071, 139 Cal.Rptr.3d 355, 273 P.3d 546 ; Collins, supra, 26 Cal.4th at p. 311, 109 Cal.Rptr.2d 836, 27 P.3d 726 ; Diaz, supra, 3 Cal.4th at p. 571, 11 Cal.Rptr.2d 353, 834 P.2d 1171 ; Robertson, supra, 48 Cal.3d at p. 37, fn. 5, 255 Cal.Rptr. 631, 767 P.2d 1109 ; Miller, supra, 7 Cal.3d at pp. 566-567, 102 Cal.Rptr. 841, 498 P.2d 1089 ) or by the prosecutor ( Scott, supra, 15 Cal.4th at p. 1208, 65 Cal.Rptr.2d 240, 939 P.2d 354 ), or through representations by defense counsel ( Deere, supra, 41 Cal.3d at p. 359, 222 Cal.Rptr. 13, 710 P.2d 925 )-that the defendant understood the nature of the right he or she was waiving. Even in Sivongxxay, which involved a less-than-ideal waiver colloquy, we upheld the jury trial waiver after a searching review of the record for indications that it was knowing and intelligent. ( Sivongxxay, supra, 3 Cal.5th at pp. 167-168, 174, 189-190, 219 Cal.Rptr.3d 265, 396 P.3d 424.) Like the other cases above, Sivongxxay did not rely on Langdon's rule that a jury trial waiver made by a defendant with counsel is presumed to be knowing and intelligent. Moreover, in addressing the significance of counsel, many of our cases have relied on affirmative indications in the record that counsel had discussed the jury trial right "fully," "thoroughly," or " 'at length' " with the defendant ( Weaver, supra, 53 Cal.4th at p. 1071, 139 Cal.Rptr.3d 355, 273 P.3d 546 ; Diaz, supra, 3 Cal.4th at p. 571, 11 Cal.Rptr.2d 353, 834 P.2d 1171 ; Robertson, supra, 48 Cal.3d at p. 36, 255 Cal.Rptr. 631, 767 P.2d 1109 ) or that the defendant "had had enough time to talk to his attorney" ( *376 Scott, supra, 15 Cal.4th at p. 1208, 65 Cal.Rptr.2d 240, 939 P.2d 354 ) or had expressly "confirm[ed] he had discussed the issue with his counsel" ( Cunningham, supra, 61 Cal.4th at p. 636, 189 Cal.Rptr.3d 737, 352 P.3d 318 ). None of our cases in the past 50 years has relied on the mere fact of representation by counsel as the basis for presuming a valid waiver. If Langdon's rule had been controlling this whole time, then much of the analysis that appears in our case law would have been unnecessary.
It is true that we have "eschewed any rigid formula or particular form of words that a trial court must use in taking a jury waiver." ( Sivongxxay, supra, 3 Cal.5th at p. 169, 219 Cal.Rptr.3d 265, 396 P.3d 424.) But in the **7 case before us, the trial court did not inform Doyle of any differences between a jury trial and a bench trial, not even the fact that a jury trial involves 12 people deciding his guilt whereas a bench trial involves only one. Although defense counsel said she had an opportunity to speak with Doyle, the record does not indicate what was discussed or whether the discussion was adequate to enable Doyle to make a knowing and intelligent waiver decision. The Court of Appeal observed that Doyle "waived his right to a jury trial without hesitation" and that he was informed of the similarities between a jury trial and a bench trial. ( Doyle, supra, 5 Cal.App.5th at p. 447, 209 Cal.Rptr.3d 828.) But those facts are not probative of whether Doyle understood the distinctive features of a jury trial. Without that understanding, it is unclear how he could have intelligently decided to waive a jury trial in favor of a bench trial. The Court of Appeal ultimately relied on the fact that Doyle was represented by counsel and that nothing in the record shows he was misled or confused as to the nature of the right he purportedly waived. ( Doyle, supra, 5 Cal.App.5th at p. 447, 209 Cal.Rptr.3d 828.) By shifting the burden to Doyle to affirmatively show that his waiver decision was not knowing and intelligent, the Court of Appeal departed from our decades-long approach of asking whether the record affirmatively shows that the waiver decision was knowing and intelligent. The Court of Appeal relied on authority that we have not expressly disavowed. (See Lookadoo, supra, 66 Cal.2d at p. 311, 57 Cal.Rptr. 608, 425 P.2d 208, citing Langdon, supra, 52 Cal.2d at p. 432, 341 P.2d 303.) But we have not relied on that authority in nearly five decades, despite ample opportunity to do so. Instead of dismissing review in this case, we should order briefing and decide the continuing vitality of the Langdon rule. II. The matter before us is the third case this year in which a thin colloquy has left us scouring the record for clues as to whether a defendant's jury trial waiver was knowing and intelligent. Although a waiver colloquy is not the only factor bearing on the constitutional validity of a jury trial waiver, our opinion in Sivongxxay"emphasize[d] the value of a robust oral colloquy in evincing a knowing, intelligent, and voluntary waiver of a jury trial." ( Sivongxxay, supra, 3 Cal.5th at p. 169, 219 Cal.Rptr.3d 265, 396 P.3d 424.) Specifically, we recommended that "trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." ( Ibid. ) Further, we advised that "the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so *377 in any number of ways-among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived." ( Id. at pp. 169-170, 219 Cal.Rptr.3d 265, 396 P.3d 424.) We said this guidance is "advisory" and "is not intended to limit trial courts to a narrow or rigid colloquy." ( Id. at p. 170, 219 Cal.Rptr.3d 265, 396 P.3d 424.)
The waiver colloquy in Sivongxxay, a capital case, mentioned that a jury is made up of 12 members of the community, that the defendant and his counsel would participate in jury selection, and that the judge alone would decide the question of guilt if a jury trial was waived. ( Sivongxxay, supra, 3 Cal.5th at pp. 165-166, 219 Cal.Rptr.3d 265, 396 P.3d 424.) But the Sivongxxay colloquy did not mention that all 12 jurors must be unanimous in order to render a verdict, nor did the trial court inquire whether the defendant understood what a jury trial is, whether the defendant had discussed the decision with counsel, or whether the defendant had any questions about the jury trial right. Based on the totality of circumstances, including the colloquy and the defendant's prior experience with the criminal justice system, the court concluded that his waiver of a jury trial as to the guilt phase was knowing **8 and intelligent. ( Id. at p. 167, 219 Cal.Rptr.3d 265, 396 P.3d 424.) The court also found the waiver to be constitutionally adequate as to the special circumstance and penalty phases ( id. at pp. 171-176, 188-190, 219 Cal.Rptr.3d 265, 396 P.3d 424 ) over the dissents of two justices ( id. at pp. 202-206, 212-214, 219 Cal.Rptr.3d 265, 396 P.3d 424 (conc. & dis. opn. of Liu, J.); id. at pp. 216-224, 219 Cal.Rptr.3d 265, 396 P.3d 424 (conc. & dis. opn. of Cuéllar, J.)). In Daniels, another capital case, the trial court advised the defendant (who elected to waive counsel) that if he waived a jury trial, the court alone would decide the question of guilt, but the waiver colloquy did not mention any of the other advisements we recommended in Sivongxxay. ( Daniels, supra, 3 Cal.5th at pp. 986-989, 221 Cal.Rptr.3d 777, 400 P.3d 385 (lead opn. of Cuéllar, J.).) "The court never asked defendant whether he understood ... the nature of the jury right he was waiving. The court itself supplied no information on the subject, nor did it confirm that defendant had received such information elsewhere-for example, from a written advisement (which defendant did not receive) or from counsel (which defendant, who was then self-represented, did not have)." ( Id. at p. 1029, 221 Cal.Rptr.3d 777, 400 P.3d 385 (conc. opn. of Kruger, J., conc. in the judgment).) Based on the totality of circumstances, including "indications in the record that defendant's overarching aim throughout the proceedings was simply to accept responsibility for the charged crimes" ( ibid. ), a four-to-three majority upheld the jury trial waiver as to the guilt phase, while a different four-to-three majority found the waiver constitutionally invalid as to the penalty phase. (See id. at pp. 1029-1030, 221 Cal.Rptr.3d 777, 400 P.3d 385 (conc. opn. of Kruger, J.); id. at p. 1002, 221 Cal.Rptr.3d 777, 400 P.3d 385 (lead opn. of Cuéllar, J.); id. at p. 1028, 221 Cal.Rptr.3d 777, 400 P.3d 385 (conc. & dis. opn. of Corrigan, J.).) In Doyle's case, the waiver colloquy is even more devoid of content than the one we narrowly upheld in Daniels. It did not include any of the four advisements we recommended in Sivongxxay nor any of the questions we urged trial courts to ask in order to assess whether a defendant's waiver decision has been " ' " 'made with a full awareness both *378 of the nature of the right being abandoned and the consequences of the decision to abandon it.' " ' " ( Cunningham, supra, 61 Cal.4th at p. 636, 189 Cal.Rptr.3d 737, 352 P.3d 318.) In Sivongxxay, we declined to hold, as a constitutional rule, that before accepting a jury trial waiver, a trial court must engage the defendant in a colloquy with specific advisements. ( Sivongxxay, supra, 3 Cal.5th at p. 170, 219 Cal.Rptr.3d 265, 396 P.3d 424.) However, as this case and others demonstrate, the absence of an informative colloquy often leaves reviewing courts with the conundrum of resolving the validity of a jury trial waiver on the basis of faint signals and debatable inferences from the record. An inquiry as fundamental as whether a criminal defendant has knowingly and intelligently waived a jury trial should not turn on such guesswork.
Other jurisdictions have eliminated the guesswork by taking a more prescriptive approach. The New Jersey Supreme Court, like our court, has not constitutionalized any requirements, but it has exercised its supervisory powers to require a jury waiver form as well as a colloquy, each of which must include the four advisements we recommended in Sivongxxay. ( State v. Blann (2014) 217 N.J. 517, 90 A.3d 1253, 1253.) The Wisconsin Supreme Court has held that a valid jury trial waiver requires a colloquy "designed to ensure that the defendant [among other things] was aware of the nature of a jury trial, such that it consists of a panel of 12 people that must agree on all elements of the crime charged" and "had enough time to discuss this decision with his or her attorney." ( State v. Anderson (2002) 249 Wis.2d 586, 638 N.W.2d 301, 310.) In Colorado, a state rule of criminal procedure provides that a court may not accept a jury trial waiver "without first determining [among other things] [¶] ... [¶] [t]hat the defendant understands that: [¶] (i) The waiver would apply to all issues that might otherwise need to be determined by a jury including those issues requiring factual findings at sentencing; [¶] (ii) The jury would be composed of a certain number of people; [¶] (iii) A jury verdict must be unanimous; [¶] (iv) In a trial to the court, the judge alone would decide the verdict; [¶] (v) The choice to waive a jury trial is the defendant's alone and may be made contrary to counsel's advice."
**9 ( Colo. Rules Crim. Proc., rule 23(a)(5)(II)(b).) In Vermont, a state rule of criminal procedure provides that "[t]he court shall not accept the defendant's waiver of the right to trial by jury without first, by addressing the defendant personally in open court, informing that person of, and determining that the person understands, the following: [¶] (1) That the jury consists of 12 members of the community, and that the defendant may participate in their selection; [¶] (2) That before the defendant can be convicted, all 12 members of the jury must agree on the defendant's guilt; [¶] (3) That where a jury is waived, the court alone decides guilt or innocence in accordance with the facts and the law." ( Vt. Rules Crim. Proc., rule 23(a).) Our precedent does not foreclose us, in a future case, from exercising "our supervisory power over California criminal procedure" to establish specific procedures to eliminate uncertainty as to whether a criminal defendant has knowingly and intelligently waived a jury trial. ( People v. Burgener (2003) 29 Cal.4th 833, 861, 129 Cal.Rptr.2d 747, 62 P.3d 1 ; see People v. Engelman (2002) 28 Cal.4th 436, 449, 121 Cal.Rptr.2d 862, 49 P.3d 209.) In the meantime, given the importance and recurring nature of this issue, the alternative approaches cited above appear worthy of consideration by the Judicial Council pursuant to its rulemaking authority. (Cal. Rules of Court, rules 10.13, 10.20, 10.21, 10.22.) The Legislature may also wish to consider whether it *379 makes sense to require a written waiver or oral colloquy (or both) and, if so, what content such procedures must include to ensure that a criminal defendant fully understands the nature of a jury trial and the consequences of waiving it. (Cf. Pen. Code, §§ 977, subd. (b)(2) [prescribing language for written waiver of defendant's right to be personally present in criminal proceedings], 1192.5 [prescribing specific advisements that trial courts must give before accepting a guilty plea].) "For the average reader (or writer) of judicial opinions, it is perhaps elementary what a jury is and how it functions in a criminal trial. But we cannot assume such knowledge among the general populace ...." ( Daniels, supra, 3 Cal.5th at p. 1007, 221 Cal.Rptr.3d 777, 400 P.3d 385 (conc. & dis. opn. of Liu, J.).) Safeguarding the right to trial by jury-what Justice Scalia called "the spinal column of American democracy" ( Neder v. United States (1999) 527 U.S. 1, 30, 119 S.Ct. 1827, 144 L.Ed.2d 35 )-is properly a task not only for the judiciary but also for the people's representatives. LIU, J.