Filed 1/6/22  P. v. B.P. CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>B.P.,<br><br>    Defendant and Appellant. | 2d Crim. No. B311051<br>(Super. Ct. No. 21PT-00059)<br>(San Luis Obispo County) |

B.P. appeals from an order committing him for treatment to the Department of State Hospitals as a mentally disordered offender (MDO).  (Pen. Code, § 2962 et seq.)  He was diagnosed with schizophrenia.  His commitment offense was attempted rape by means of force or fear with an enhancement for inflicting great bodily injury.  (*Id*., §§ 664, 261, subd. (a)(2), 12022.7, subd. (a).)  Appellant committed the offense five days after his release from prison.  Pursuant to a plea bargain, he was sentenced to prison for six years.

Appellant's sole contention is that his waiver of a jury trial was invalid because the trial court failed to properly advise him

of his right to a jury trial. The Attorney General concedes that appellant's contention has merit and that the commitment order must be reversed. We reject the Attorney General's concession and affirm. Considering the totality of the circumstances, we conclude appellant knowingly, intelligently, and voluntarily waived his right to a jury trial.

### Proceedings in Trial Court

The trial court's jury trial advisement and appellant's waiver were as follows:

"[Appellant's Counsel]: Your Honor, I've spoken to [appellant] about his jury trial rights, and he's going to elect to have a court trial and waive his jury trial.

"THE COURT: All right. Mr. [P.], you understand that the question of whether you meet these criteria [the MDO criteria], you have a right to have a jury make that decision. [Counsel] indicates that you understand that right; is that true?

"[Appellant]: Yeah.

"THE COURT: All right. Do you want to waive that right and have a judge make the decision?

"[Appellant]: Yeah.

"THE COURT: Okay. You join, [counsel]?

"[Appellant's Counsel]: "I do, Your Honor.'"

### Waiver of Right to Jury Trial

"'[A] defendant's waiver of the right to jury trial may not be accepted by the court unless it is knowing and intelligent, that is, ""'made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it,'"" as well as voluntary ""'in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception.'"" [Citation.] '[W]hether or not there is an intelligent,

competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case.'" (*People v. Sivongxxay* (2017) 3 Cal.5th 151, 166 (*Sivongxxay*).) "On appeal, we independently examine the entire record to determine whether the defendant knowingly and intelligently waived the right to [a jury trial]." (*People v. Burgener* (2009) 46 Cal.4th 231, 241.)

"[A] trial court's failure to properly advise an MDO defendant of the right to a jury trial does not by itself warrant automatic reversal. Instead, a trial court's acceptance of a defendant's personal waiver without an express advisement may be deemed harmless if the record affirmatively shows, based on the totality of the circumstances, that the defendant's waiver was knowing and voluntary." (*People v. Blackburn* (2015) 61 Cal.4th 1113, 1136 (*Blackburn*).) "[T]he totality of the circumstances approach permits a reviewing court to take into account events that follow the entry of a jury waiver to confirm matters such as the waiver's character and scope." (*Sivongxxay, supra*, 3 Cal.5th at p. 167, fn. 2.)

*People v. Blancett Is Distinguishable*

In *People v. Blancett* (2017) 15 Cal.App.5th 1200 (*Blancett*), we considered whether a prisoner had validly waived his right to a jury trial in an MDO proceeding. We stated: "*Blackburn*[, *supra*,] 61 Cal.4th 1113 . . . holds that a trial court must advise a defendant in an MDO . . . recommitment hearing of his or her right to a jury trial. . . . *Blackburn* means what it says and applies to all MDO hearings, including original commitment hearings [as in the present case]. [¶] [¶] Prior to conducting a bench trial, the trial court must obtain personally from an MDO defendant a knowing, intelligent, and voluntary waiver of the

3

right to a jury trial unless the court finds substantial evidence that the defendant lacks the capacity to make such a waiver. [Citation.]" (*Blancett*, at p. 1202.)

We noted that in *Sivongxxay*, *supra*, 3 Cal.5th at p. 169, our Supreme Court had "emphasized 'the value of a robust oral colloquy' in eliciting a knowing, intelligent, and voluntary waiver of a jury trial." (*Blancett*, *supra*, 15 Cal.App.5th at p. 1205.) In *Blancett* the colloquy between the MDO defendant and the trial court was as follows:

"'[Counsel]: Yes. We'd like to set it for court trial.

"'The Court: All right. So, Mr. B., [counsel] says that you are okay with having a judge decide your case and not a jury?

"'[Blancett]: Yes, your honor.

"'The Court: That's okay with you?

"'[Blancett]: Yes, your honor.

"'The Court: All right.'" (*Blancett*, *supra*, at p. 1203.)

We concluded that the MDO defendant in *Blancett* "did not waive his right to a jury trial with full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it." (*Blancett*, *supra*, 15 Cal.App.5th at p. 1206.) We explained: "The trial court did not inform Blancett that he had a right to a jury trial, nor did the court explain the significant attributes or mechanics of a jury trial. [Citation.] Neither did the court inquire whether Blancett had sufficient opportunity to discuss the decision with his attorney, whether his attorney explained the differences between a bench trial and a jury trial, or whether Blancett had any questions about the waiver. [Citation.] In a barebones colloquy, the court asked only if Blancett was 'okay' with a court trial instead of a jury trial. [Citation.] . . . Indeed, the court appointed counsel moments

4

before Blancett entered his waiver and there is no record of discussion between Blancett and his attorney prior to the waiver. [¶] Moreover, this was Blancett's initial MDO commitment and the record does not suggest that Blancett was familiar with MDO proceedings or that he was aware that he was entitled to a jury trial." (*Ibid*.) "In view of the trial court's stark colloquy, the lack of evidence that Blancett discussed his jury trial right and waiver with counsel, Blancett's inexperience with the criminal justice system, and Blancett's lack of familiarity with MDO proceedings, we conclude that his waiver was not knowing and intelligent." (*Id*. at pp. 1206-1207.)

The present case is distinguishable from *Blancett*. Unlike the trial court in *Blancett*, here the trial court expressly advised appellant of his right to a jury trial. Appellant expressly waived that right. In addition, appellant's counsel said that he had "spoken to [appellant] about his jury trial rights," and appellant affirmed that he "underst[oo]d" these rights. (See *Blackburn*, *supra*, 61 Cal.4th at p. 1124 ["counsel is presumed to know the defendant's rights and is obligated to advise the defendant accordingly"].) Finally, as we explain in the next section of this opinion, appellant was not "inexperience[d] with the criminal justice system." (*Blancett*, *supra*, 15 Cal.App.5th at p. 1207.)

*People v. Jones Is Also Distinguishable*

*People v. Jones* (2018) 26 Cal.App.5th 420 (*Jones*), indicates that appellant's jury waiver was not valid merely because he expressly waived his right to a jury trial and said that he understood this right. In *Jones* the defendant appealed after her conviction for second degree murder following a court trial. The waiver of her right to a jury trial was as follows:

5

"'[Prosecutor]: Ms. Jones, your attorney[] ha[s] indicated that you wish to waive jury and have this case decided by Judge Sahagun sitting alone. In order to do that, you . . . have to waive your right to a jury trial. Ms. Jones, do you understand your right to a jury trial?

"'Defendant Jones: Yes, sir.

"'[Prosecutor]: Do you agree to waive that right and have Judge Sahagun, sitting alone, decide the case?

"'Defendant Jones: Yes, sir.'" (*Jones, supra,* at p. 428.)

The appellate court held that Jones's "waiver of her right to a jury trial was not knowing, intelligent, and voluntary" because "[t]he trial court's two-question inquiry of Jones, as to whether she 'underst[ood] [her] right to a jury trial' and whether she agreed to waive that right and have the trial judge 'sitting alone, decide the case' does not affirmatively show that Jones understood the nature of the right to a jury trial she was relinquishing." (*Jones*, *supra*, 26 Cal.App.5th at p. 423.)

Jones's representation by counsel did not affect the validity of her jury waiver: The appellate court explained: "[T]he record does not show whether Jones's attorney ever discussed with her the nature of a jury trial, including for example, that the jury would be comprised of 12 of her peers from the community. Further, the trial court did not specifically advise Jones that she had a right to a jury trial, instead only asking her, '[D]o you understand your right to a jury trial?' She responded, 'Yes, sir.'" (*Jones*, *supra*, 26 Cal.App.5th at p. 435.) "The trial court did not inquire whether Jones . . . discussed her decision with her attorney, or whether she had any questions. . . . Because the trial court did not advise Jones as to the specific rights she would be giving up or inquire if her attorney explained those rights to her,

6

her bare acknowledgment that she understood her right to a jury trial was inadequate." (*Id*. at p. 436.) The court noted: "Jones had no experience with the criminal justice system. Neither the information nor the probation report reveals a prior criminal charge." (*Id*. at p. 437.)

The present case is distinguishable from *Jones*. Here the trial court specifically advised appellant that he had a right to a jury trial. Moreover, in contrast to *Jones*, appellant's counsel said that he had "spoken to [appellant] about his jury trial rights," and appellant did not contradict counsel on this point. Finally, while "Jones had no experience with the criminal justice system," appellant was a veteran of that system. (*Jones*, *supra*, 26 Cal.App.5th at p. 437.) Although appellant was only 34 years old when he committed the commitment offense, he had accumulated a 30-page rap sheet that is included in the record on appeal. A psychological evaluation of appellant states: "Criminal records reveal he was first arrested at the age of 15. [¶] [¶] His adult criminal history consists of arrests and/or convictions of disorderly conduct, receiving stolen property, obstruct/resist public officer, grand theft person, theft of elder/dependent adult, possession of controlled substance (numerous), possession of hypodermic needle/syringe without permit (numerous), use of controlled substance (numerous), transport controlled substance (multiple), possession of controlled substance in prison, forgery with intent to defraud, false identification to peace officers, violation of parole, escape attempt, possession of dangerous weapon, carry concealed dirk or dagger, sexual battery (in prison arrest), indecent exposure (multiple in-prison arrests), battery by prisoner, assault by prisoner, robbery 1st, robbery 2nd, stalking, sexual battery touch for sexual arousal, burglary 1st, assault to

7

commit rape, and false imprisonment." The evaluation observes that appellant "is currently serving his fourth . . . prison term."

According to appellant's rap sheet, he has had numerous felony and misdemeanor convictions. For three of the many misdemeanor convictions, the rap sheet shows that, while represented by counsel, he waived his right to a jury trial.

*The Trial Court Was Not Required to Track*
*the Supreme Court's Guidelines in Sivongxxay*

The Attorney General asserts, "Because the proceedings here did not track our Supreme Court's guidelines [in *Sivongxxay*], the record fails to reveal affirmative evidence of a knowing and intelligent waiver." In *Sivongxxay* the Supreme Court "offer[ed] some general guidance to help ensure that a defendant's jury trial waiver is knowing and intelligent, and to facilitate the resolution of a challenge to a jury waiver on appeal." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 169.) The court "recommend[ed] that trial courts advise a defendant of the basic mechanics of a jury trial in a waiver colloquy, including but not necessarily limited to the facts that (1) a jury is made up of 12 members of the community; (2) a defendant through his or her counsel may participate in jury selection; (3) all 12 jurors must unanimously agree in order to render a verdict; and (4) if a defendant waives the right to a jury trial, a judge alone will decide his or her guilt or innocence." (*Ibid*.) The court "also recommend[ed] that the trial judge take additional steps as appropriate to ensure, on the record, that the defendant comprehends what the jury trial right entails. A trial judge may do so in any number of ways—among them, by asking whether the defendant had an adequate opportunity to discuss the decision with his or her attorney, by asking whether counsel

8

explained to the defendant the fundamental differences between a jury trial and a bench trial, or by asking the defendant directly if he or she understands or has any questions about the right being waived." (*Id*. at pp. 169-170.)

Contrary to the Attorney General's concession, a trial court's failure to follow the *Sivongxxay* guidelines does not necessarily result in the absence of "affirmative evidence of a knowing and intelligent waiver." The Supreme Court stated: "[W]e emphasize that our guidance is not intended to limit trial courts to a narrow or rigid colloquy." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170.) "Our precedent has not mandated any specific method for determining whether a defendant has made a knowing and intelligent waiver of a jury trial in favor of a bench trial. We instead examine the totality of the circumstances." (*Id*. at p. 167.) "[A] trial court's adaptation of or departure from the recommended colloquy in an individual case will not necessarily render an ensuing jury waiver invalid. . . . Reviewing courts must continue to consider all relevant circumstances in determining whether a jury trial waiver was knowing, intelligent, and voluntary." (*Id*. at p. 170.) "[U]ltimately, a '"defendant's rights are not protected only by adhering to a predetermined ritualistic form of making the record. Matters of reality, and not mere ritual, should be controlling."'" (*Ibid*.)

In *Sivongxxay* the defendant was "a Laotian refugee with no formal education and limited command of the English language . . . ." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 166.) "[H]e was represented by counsel and assisted by a translator throughout the trial." (*Id*. at p. 167.) After a court trial, he was convicted of first degree murder. The trial court found true a special circumstance allegation and imposed the death penalty.

The Supreme Court upheld the validity of the defendant's jury waiver even though "the trial court's waiver colloquy did not explain that a jury must be impartial, that its verdict must be unanimous, or that the trial court must declare a mistrial if the jury fails to reach a verdict. The trial court also did not ask any questions confirming that defendant understood how a jury works, or that defendant had discussed the jury waiver with his counsel." (*Id*. at pp. 166-167.) "[T]he trial court advised defendant that he had a right to a jury trial, that a jury consists of 12 people from the community, that he would have the right to participate in the selection of the jury, and that waiver of the right to a jury would mean the judge alone would determine his guilt or innocence and any resulting punishment. After these advisements, defendant answered 'Yes' when asked whether he wished to 'give up [his] right to a jury trial and agree that this Court, alone, will make those decisions.'"[1] (*Id*. at p. 167.) Despite

---

[1] The verbatim advisement and waiver were as follows:

"'THE COURT: Mr. Mounsaveng, Mr. Sivongxxay, you each have a right to a trial, either by a jury of 12 people selected from this community, through a process that you would engage in with your attorneys, the district attorney and the Court, or a trial in front of a judge, acting alone without a jury. [¶] The burden of proof remains the same. The district attorney has the burden to go forth with evidence sufficient to prove your guilt beyond a reasonable doubt. Then, and only then, would we get to a penalty phase. [¶] In a court trial, I would hear the evidence. I, alone, would make the decision on whether that evidence was sufficient to prove your guilt beyond a reasonable doubt. [¶] In the event I made such a finding, as to either or both of you, we would then proceed to a penalty phase, where the district attorney would present aggravation evidence. Through your—you, through your attorney, would have a right to present mitigation evidence, and

10

the noncompliance with the *Sivongxxay* guidelines, the Supreme Court concluded, "Viewed holistically, the circumstances surrounding defendant's jury waiver demonstrate that it was knowing and intelligent." (*Id.* at p. 168.)

### *Appellant Knowingly, Intelligently, and Voluntarily Waived His Right to a Jury Trial*

Considering the totality of the circumstances, we conclude appellant knowingly, intelligently, and voluntarily waived his right to a jury trial. "The defense initiated the request for a court trial." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.) Counsel said, "I've spoken to [appellant] about his jury trial rights, and he's going to elect to have a court trial and waive his jury trial." The court informed appellant that he had a right to a jury trial. It asked, "[Counsel] indicates that you understand that right; is that true?" Appellant answered that he understood the right and "want[ed] to waive that right and have a judge make the decision." In contrast to the waiver here, in *Sivongxxay* there was no evidence "that defendant had discussed the jury waiver with his counsel." (*Ibid.*) It is arguable that, in view of counsel's statement that he had discussed the jury waiver with appellant, evidence of an intelligent and knowing waiver is stronger here than in *Sivongxxay*.

---

it would fall upon me to make the decision as to the appropriate punishment, which could result in a death penalty sentence. [¶] Do you give up your right to a jury trial and agree that this Court, alone, will make those decisions, Mr. Mounsaveng?

"'THE DEFENDANT MOUNSAVENG: Yes.

"'THE COURT: Mr. Sivongxxay?

"'THE DEFENDANT SIVONGXXAY: Yes.'" (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 165-166.)

11

"Although the presence of counsel does not by itself mean 'that the defendant's interests and rights are protected . . . the fact of counsel being present and having advised the defendant is a factor to be considered in determining the question of the need for or sufficiency of any admonition given by the court. [Citations.]' . . . Indeed, it would be to blink at the reality disclosed by this record to conclude other than that the [appellant's] decision to have his fate determined by [the trial court], rather than by a jury, was a tactical decision entered into by [appellant] after consultation with and advice from experienced and capable defense counsel."[2]  (*State v. Cobb* (1999) 251 Conn. 285, 373 (*Cobb*); see also *People v. Doyle* (2016) 19 Cal.App.5th 946, 953 [waiver of jury trial valid because "defendant's counsel advised the trial court she had discussed defendant's waiver of a jury trial with him on two occasions" and "[t]here is nothing in the record to support that defendant was confused as to the right to a jury trial or that he did not knowingly waive that right"]; *People v. Acosta* (1971) 18 Cal.App.3d 895, 902 ["We are not aware of any rule of law that entitles a defendant who is represented by counsel and who has discussed waiver of a jury trial with his counsel, as here, to have the court advise him of the merits or the disadvantages of a trial by jury, as against a court trial"]; *People v. Wrest* (1992) 3 Cal.4th 1088, 1105 ["There is no constitutional requirement that appellant understand 'all the ins and outs' of a jury trial in order to waive his right to one"].)

Appellant's extensive experience with the criminal justice system is significant.  In concluding that the defendant in

---

[2] We take judicial notice that trial counsel was admitted to the State Bar of California in 1980.

*Sivongxxay* had knowingly and intelligently waived his right to a jury trial, our Supreme Court considered that "defendant had prior experience with the criminal justice system, having pleaded guilty to two prior offenses in Oregon and one in Washington State." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 167.) The *Sivongxxay* defendant's experience with the criminal justice system was miniscule compared to appellant's experience. (See *Parke v. Raley* (1992) 506 U.S. 20, 37 ["We have previously treated evidence of a defendant's prior experience with the criminal justice system as relevant to the question whether he knowingly waived constitutional rights"]; *People v. Langdon* (1959) 52 Cal.2d 425, 432 [trial court not required to "explain[] to defendant the nature and possible consequence of his action in waiving a jury trial" since "[d]efendant not only was represented by counsel, but according to the record had also been before the criminal courts on at least three previous occasions"]; *Cobb*, *supra*, 251 Conn. at p. 372 [in concluding that defendant's jury waiver was valid, court took into account that "'[t]he defendant was not a novice in the criminal justice system'" and "had been advised of his right to a jury trial in relation with another sexual assault charge"]; *Poore v. State* (Ind. 1997) 681 N.E.2d 204, 207 ["Poore's significant criminal history suggests a high level of familiarity with the judicial process, making it quite likely that he knew what a 'jury' was"].)

*Response to Dissenting Opinion*

The dissent concludes that appellant's status as "a mentally disordered offender who suffers from schizophrenia . . . raises a doubt" whether he understood the significance of the right he was waiving. (Dis. Opn., *post*, at p. 1.) The dissent puts too much emphasis on appellant's mental illness at the expense

13

of "the totality of the circumstances presented here."
(*Sivongxxay*, *supra*, 3 Cal.5th at p. 189.) "A schizophrenic
condition does not render a defendant incapable of effectively
waiving his rights." (*People v. Watson* (1977) 75 Cal.App.3d 384,
397.) The California Supreme Court found that a 13-year-old
minor had knowingly and intelligently waived his *Miranda* rights
(*Miranda v. Arizona* (1966) 384 U.S. 436) despite his "young age
and low intelligence" and his diagnosis as a "paranoid
schizophrenic." (*People v. Lewis* (2001) 26 Cal.4th 334, 384.)

 The dissent overlooks the crucial role of counsel. "Counsel
is presumed competent and informed as to applicable
constitutional and statutory law. . . . Counsel . . . can be
expected, where necessary or advisable, to consult with the client
about jury trial concerns. [Citation.]" (*People v. Barrett* (2012) 54
Cal.4th 1081, 1105; see also *Conservatorship of John L.* (2010) 48
Cal.4th 131, 151 ["Like all lawyers, the court-appointed attorney
is obligated to keep her client fully informed about the
proceedings at hand, [and] to advise the client of his rights"];
*People v. Daniels* (2017) 3 Cal.5th 961, 996 (lead opn. of Cuéllar,
J.) ["Counsel plays a crucial part in transmitting information to
the client [about waiver of the right to a jury trial]. Time and
time again, our precedent has recognized as much, incorporating
within the totality of relevant circumstances not only the fact of
representation by counsel, but also record references to
discussions between counsel and defendant"]; *Id.* at p. 999
["Courts generally rely on counsel to transmit to defendants
critical information about whether to waive the jury trial right
and the consequences of waiving it"]; *People v. Diaz* (1992) 3
Cal.4th 495, 571 [jury waiver valid because, among other factors,

"defendant acknowledged that he had thoroughly discussed the jury waiver with his attorney"].)

Here, counsel informed the trial court that he had "spoken to [appellant] about his jury trial rights." Appellant responded in the affirmative to the court's question, "[Counsel] indicates that you understand that right [the right to a jury trial]; is that true?" The dissent's rejection of appellant's affirmative response is based on speculation that, because of his "mental health issues dating from his childhood," he did not understand his right to a jury trial. (Dis. Opn., *post*, at p. 2.) No expert testimony or any other evidence was presented on this issue. "[A]n inference [cannot] be based on mere possibility or flow from suspicion, imagination, speculation, supposition, surmise, conjecture or guesswork." (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581.) "It must logically flow from other facts established in the action." (*People v. Austin* (1994) 23 Cal.App.4th 1596, 1604, disapproved on another ground in *People v. Palmer* (2001) 24 Cal.4th 856, 861, 867.) Other facts here – appellant's extensive experience with the criminal justice system, as manifested by his 30-page rap sheet, and the colloquy among the court, counsel, and appellant at the time of the jury waiver – show that appellant understood his right to a jury trial. "The record reveals no hesitation by [appellant] in entering the waiver, nor uncertainty or confusion about its scope or consequences . . . ." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 188.)

The Supreme Court's recommendation of an extended jury advisement/waiver colloquy is to be applauded. (*Sivongxxay*, *supra*, 3 Cal.5th at pp. 169-170.) But the recommendation is not a straitjacket to be used in the pursuit of perfect justice. (See Fleming, The Price of Perfect Justice (1974).) ""Matters of

15

reality . . . should be controlling.""" (*Sivongxxay*, *supra*, 3 Cal.5th at p. 170.)  Matters of reality here confirm that appellant knowingly and intelligently waived his right to a jury trial.

<em>Conclusion</em>

In *Sivongxxay* our Supreme Court noted:  "[I]n various contexts in which we have been called upon to ascertain whether a waiver of constitutional rights was knowing and intelligent, we have not focused myopically on the waiver colloquy in isolation, but instead have conducted a more comprehensive assessment of the totality of the circumstances.  [Citations.] . . . [H]ere the relevant circumstances include not only the colloquy, but also defendant's prior criminal history, . . . and the fact that defendant was represented by counsel." (*Sivongxxay*, *supra*, 3 Cal.5th at p. 173, fn. 8.)  In the present case, an additional relevant circumstance is that counsel discussed the jury waiver with appellant.  We "uphold the validity of [the] jury waiver" because """the record *affirmatively* shows that [the waiver] is voluntary and intelligent under the totality of the circumstances."" (*People v. Daniels*, *supra*, 3 Cal.5th at p. 991 (lead opn. of Cuéllar, J.).)

<em>Disposition</em>

The order committing appellant for treatment to the Department of State Hospitals as an MDO is affirmed.

<u>NOT TO BE PUBLISHED.</u>

YEGAN, J.

I concur:


PERREN, J.


16

GILBERT, P.J.

I respectfully dissent.

My colleagues attribute a degree of sophistication to B.P. that might not be there. They make a plausible argument that he may be well versed in and understand the nature of jury trials. But such conjecture does not convince me to reject both B.P.'s and the Attorney General's arguments. The Attorney General quotes this court's caution in *People v. Blancett* (2017) 15 Cal.App.5th 1200, 1202: "Prior to conducting a bench trial, the trial court must obtain personally from an MDO defendant a knowing, intelligent, and voluntary waiver of the right to a jury trial unless the court finds substantial evidence that the defendant lacks the capacity to make such a waiver." (*Ibid.*, quoting *People v. Blackburn* (2015) 61 Cal.4th 1113, 1116.)

Although B.P. pleaded guilty to offenses including child molestation prior to the instant MDO hearing, we know nothing about the nature or extent of the advisements, if any, he received before entering earlier pleas. The majority argues that "[f]or three of the many misdemeanor convictions, the rap sheet shows that, while represented by counsel, he (B.P.) waived his right to a jury trial." (Maj. opn. *ante*, at p. 8.)

The assumption that B.P. knew the significance of a jury waiver assumes he had the capacity to waive jury. His lengthy record renders this assumption seemingly reasonable on one hand, but highly problematic on the other. He is a mentally disordered offender who suffers from schizophrenia. To what extent this may affect his capacity to waive jury I leave to others, but it raises a doubt in my mind.

I cannot say whether B.P.'s past jury waivers were affected by his mental illness. Neither can I determine whether those

1

past judicial encounters were fresh in his mind at the time of this hearing.

B.P. was initially found incompetent to stand trial on the commitment offense. He has a long history of mental health issues dating from his childhood. This history suggests that whatever B.P.'s interaction with the court system in the past, his current jury waiver, "yeah," said twice over a Zoom hearing, is not reassuring.

The remand in *Blackburn* was limited to the circumstances of that case. There is no reason here that a limited remand involving the trial court's inquiry concerning B.P.'s understanding of the nature of a jury trial would not be appropriate. Depending upon B.P.'s responses, the court will be in a position to determine whether his waiver of jury trial was knowing, intelligent, and voluntary.

I would remand in accordance with the Attorney General's suggestion.

NOT TO BE PUBLISHED.

GILBERT, P. J.

2

Michael L. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, Eric J. Kohm, Deputy Attorney General, for Plaintiff and Respondent.